# In the United States Court of Federal Claims

No. 13-236C
(Filed August 6, 2014)

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                        *
KELLOGG BROWN & ROOT                    *
SERVICES, INC.,                         *
                                        *
                    Plaintiff,          *
         v.                             *
                                        *
THE UNITED STATES.                      *
                                        *
                    Defendant.          *
                                        *
* * * * * * * * * * * * * * * * * * * * * * * *
```

Dismissal for lack of subject-matter jurisdiction, RCFC 12(b)(1); contract closeout; contract administration; no bid protest jurisdiction, 28 U.S.C. § 1491(b); Contract Disputes Act, 41 U.S.C. §§ 7101–7109; standing; no competitive injury alleged.

*Richard B. Oliver,* McKenna Long & Aldridge LLP of Los Angeles, California, with whom were *Raymond B. Biagini*, *Herbert L. Fenster*, *Henry J. Schweiter*, of Washington, D.C., and *Agustin D. Orozco* and *J. Matthew Carter*, of Los Angeles, California, for plaintiff.

*J. Reid Prouty*, Senior Trial Counsel, and *Alex P. Hontos*, Trial Attorney, Civil Division, Department of Justice, with whom were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Kirk T. Manhardt*, Assistant Director, all of Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

This case has been brought in the guise of a pre-award bid protest. Plaintiff, Kellogg Brown & Root Services, Inc. (KBR), challenges what it claims to be a solicitation for a proposal to conduct closeout activities for KBR's contract DAAA09-02-D-0007, more commonly known as the LOGCAP III contract (LOGCAP III). The government has moved to dismiss the case for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), contending, *inter alia*, that KBR lacks standing to bring these claims as a bid protest, and that the case concerns matters of contract administration. *See* Def.'s Second Mot. to Dismiss (Def.'s Mot.) at 8–20, 23–25. The government argues that KBR, as a contract awardee, must resolve any disputes related to the closeout of the LOGCAP III contract under the procedures contained in the Contract

Disputes Act (CDA), 41 U.S.C. §§ 7101–7109. Def.'s Mot. at 15–20. Defendant also argues that KBR lacks standing to challenge the government's action because the contractor has not alleged that the action inflicted the requisite injury to support prejudice. *Id.* at 23–25. The Court agrees with these arguments, and for the reasons that follow **GRANTS** defendant's motion to dismiss this case.

## I. BACKGROUND

Under LOGCAP III, KBR provided support services and logistics to the United States Army (Army) in connection with the wars in Iraq and Afghanistan. Am. Compl. ¶¶ 11–13. The contract was largely conducted on a cost-reimbursement basis. *Id.* ¶ 9. The performance period for the contract ran from December of 2001 through December 13, 2011. *Id.* The contract did not address how its closeout would be conducted. *Id.* ¶ 18. Although there were discussions prior to the end of the contract, no final agreement regarding closeout was reached before the end of contract performance in December, 2011. *Id.* ¶¶ 18–22. The LOGCAP III closeout activities had since that time been paid for under a series of modifications to Task Order 160, which had been issued December 10, 2010, to create a small program management office unrelated to closeout.[1] *Id.* ¶¶ 33, 35–38; App. to Def.'s Mot. (DA) 16; Tr. (May 31, 2013) (Tr.) at 41–42.

On December 11, 2012, the Army's Contracting Officer for LOGCAP III sent KBR a "Request for Alternate Proposal" under Task Order 160, concerning calendar year 2013 "Administrative Close Out." Am. Compl. ¶ 39; DA 25–26. This letter stated that "[t]he key objectives of administrative closeout are to identify and resolve any uncompleted obligations or pending liabilities on the part of either the Government and the contractor," and added that closeout "also ensures that any issues related to the contract, including outstanding claims or litigation, have been properly documented." DA 25. Similar to an October 2011 request for a proposal covering closeout for calendar year 2012, *see* Am. Compl. ¶ 20, this request sought "a Labor Basis of estimate (BOE), Management Approach narrative, critical milestones and industry assumptions with impact statements," *id.* ¶ 39. Unlike the earlier request, the Army now wanted KBR to submit a firm-fixed price, rather than a cost-reimbursement, proposal for LOGCAP III closeout. *Id.*; *see* DA 25–26. The contractor was told that its proposal must be received no later than January 31, 2013, although after discussions this deadline was extended to March 1, 2013. Am. Compl. ¶¶ 39–40, 42.

When the notion of performing closeout on a firm-fixed price basis was first raised by the Army five months earlier, KBR responded that this was inappropriate,

---

[1] The government admits that it is obligated to compensate KBR, in some manner, for closeout activities because of the cost-reimbursement nature of LOGCAP III. Tr. (May 30, 2013) (Tr.) at 11–12.

insisting there was "no way to accurately define the scope or duration of work" and explaining that "[l]egal, administrative, compliance, audit response, vendor issues, subcontract close-out, and dispute resolution . . . are all unknowns." *Id.* ¶ 34; DA 31. Litigation uncertainties included lawsuits with subcontractors as well as the defense of tort claims arising from the performance of LOGCAP III. Am. Compl. ¶ 29. Exacerbating audit costs, the Defense Contract Audit Agency had decided to audit every invoice, and the process was expected to last eight to ten years. *Id.* ¶¶ 26–27.

Plaintiff did not submit the requested proposal, but instead filed a bid protest with the Government Accountability Office (GAO). *Id.* ¶¶ 44–45. Among other things, KBR argued that the Army was improperly soliciting a fixed price proposal, and that the task order to be awarded was beyond the scope of the expired LOGCAP III contract. *Id.* ¶ 45; DA 10. The GAO dismissed the protest on March 27, 2013, on the ground that KBR's claims concerned matters of contract administration and thus could not be heard under the GAO's bid protest jurisdiction. *See* DA 11–12. The Army gave KBR a new deadline of April 3, 2013, for submitting a closeout proposal. Am. Compl. ¶ 54. Plaintiff did not submit a proposal by that date, and the following day filed a complaint in our court. *See* Compl. After the government moved to dismiss the complaint, an amended complaint was filed. *See* Am. Compl.

Plaintiff alleges that the government's request for a proposal concerning reimbursement of closeout costs constitutes a new procurement, which it challenges under our bid protest jurisdiction over objections to solicitations, and to violations of statute or regulation in connection with a procurement. *Id.* ¶¶ 1, 7 (citing 28 U.S.C. § 1491(b)(1)).[2] The complaint contains five separate counts. First, KBR alleges that the Army's decision to reimburse closeout costs on a firm-fixed price basis was unreasonable and violates the applicable provisions of the Federal Acquisition Regulation (FAR). *See* Am. Compl. ¶¶ 31–32 (citing 48 C.F.R. §§ 16.103(b), 16.301-2); *id.* ¶¶ 34, 56–65. Second, plaintiff argues that the Army's request is an improper attempt to increase the scope and period of performance of Task Order 160, which plaintiff contends expired in December, 2011. *Id.* ¶¶ 66–71. Third, KBR argues that the Army's request would extend the performance period of LOGCAP III beyond December, 2011, in violation of a statutory limit on the duration of ID/IQ contracts. *Id.* ¶¶ 72–77. Fourth, plaintiff argues that because the Army lacks adequate appropriated funds to pay for the closeout activities, the request for proposal is a violation of the Antideficiency Act, 31 U.S.C. § 1341. *See id.* ¶¶ 80–83. Finally, KBR alleges that the Army's attempt to require it to render these services on a firm-fixed price basis, under an implied-in-fact contract extending beyond the

---

[2] It also alleges jurisdiction exists under 28 U.S.C. § 1491(b) for its claim that the implied contract for fair and honest consideration was violated, Am. Compl. ¶ 7, and in the alternative that the increased scope or period exception to the ban on task order protests applies to its lawsuit, *id.* ¶ 8 (citing 10 U.S.C. § 2304c(e)(1)(A)).

life of LOGCAP III, and without adequate appropriated funds, is a violation of the covenant of good faith and fair dealing.  *Id.* ¶¶ 91–94.  Plaintiff requests declaratory and injunctive relief, including a declaration that the Army "must obtain adequate available appropriate[d] funds" and an injunction requiring that such funds be obtained before any LOGCAP III closeout activities are further solicited.  *See id.* at 22–23.

The government has moved to dismiss the amended complaint for lack of subject-matter jurisdiction under RCFC 12(b)(1).  Its primary argument is that the case concerns a matter of contract administration relating to LOGCAP III, and not a new, separate procurement, and thus must be brought using the procedures of the CDA.  *See* Def.'s Mot. at 8–20.  Among defendant's other arguments is that KBR has not alleged sufficient injury to support standing to bring a bid protest, *id.* at 23–25, and that an implied contract to fairly consider bids is no basis for jurisdiction over this matter, *id.* at 20–22.  The motion has been fully briefed, including supplemental briefing, and two oral arguments were heard.  After fully and carefully considering the arguments of the parties, the Court concludes that the case should be dismissed on the grounds stated above.[3]

## II.  DISCUSSION

### A.  Legal Standards

Bid protests are heard by this Court under the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, § 12(a)–(b), 110 Stat. 3870, 3874.  The relevant provision states that our court "shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract . . . or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1) (2012).  Under this provision, "[a] non-frivolous allegation of a statutory or regulatory violation in connection with a procurement or proposed procurement is sufficient to establish jurisdiction." *Distributed Solutions, Inc. v. United States,* 539 F.3d 1340, 1345 n.1 (Fed. Cir. 2008).

The Federal Circuit has construed the ADRA term "interested party" to have the same definition as under the Competition In Contracting Act (CICA), 31 U.S.C.

---

[3]  The government also argues in the alternative that the challenge is not ripe, Def.'s Mot. at 25–27, and that the bulk of the allegations are prohibited by the Federal Acquisition Streamlining Act's bar on task order protests, *id.* at 27–29 (citing 10 U.S.C. § 2304c(e)(1)) --- questions which the Court need not reach. Similarly, the motion in the alternative to dismiss much of the requested relief under RCFC 12(b)(6) is DENIED-AS-MOOT.

§ 3551–3556, encompassing "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Am. Fed'n of Gov't Emps., AFL–CIO v. United States* (*AFGE),* 258 F.3d 1294, 1302 (Fed. Cir. 2001) (citing 31 U.S.C. § 3551(2)). In the context of a pre-bid, pre-award protest, the requisite interest supporting standing and prejudice is established by alleging "a non-trivial competitive injury which can be redressed by judicial relief." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1363 (Fed. Cir. 2009); *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013).

Normally when considering a motion to dismiss --- even one based on the lack of subject-matter jurisdiction --- a court must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002); *Englewood Terrace Ltd. P'ship v. United States,* 61 Fed. Cl. 583, 584 (2004). But when jurisdictional facts are challenged, the plaintiff must demonstrate jurisdiction by a preponderance of the evidence. *See McNutt v. GMAC*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). In examining jurisdictional facts, a court may consider all relevant evidence, including material outside the pleadings. *See Land v. Dollar*, 330 U.S. 731, 735 & n.4 (1947); *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278 (1936); *Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999); *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985); *Forest Glen Props., LLC v. United States*, 79 Fed. Cl. 669, 676–78 (2007); *Patton v. United States*, 64 Fed. Cl. 768, 773 (2005).

## B. This Matter Concerns Contract Administration, Not a Bid Protest

The primary basis for jurisdiction advanced by KBR is the bid protest provision of the ADRA. *See* Am. Compl. ¶ 7 (citing 28 U.S.C. § 1491(b)(1)). Plaintiff maintains that the Army's December 11, 2012 request for a firm-fixed price proposal was "a solicitation by a Federal agency for bids or proposals" to which KBR objects, and that its lawsuit concerns "alleged violation[s] of statute or regulation in connection with a procurement or a proposed procurement." *See* Pl.'s Opp'n to Def.'s 2d Mot. to Dismiss (Pl.'s Opp'n) at 2–5, 10–11, 15–16 (citing 28 U.S.C. § 1491(b)(1)).

Defendant argues that the case does not involve a bid protest at all, but rather concerns closeout costs of a contract already awarded and performed --- a matter of contract administration requiring compliance with CDA procedures, which plaintiff has eschewed. *See* Def.'s Mot. at 8–20. The government relies on a lengthening line of mostly persuasive precedents holding that contract awardees may not challenge agency decisions regarding their contracts by bringing bid protests. *See id.* at 8–9, 15–16 (citing, *inter alia, TigerSwan, Inc. v. United States*, 110 Fed. Cl. 336, 348 (Fed. Cl. 2013), *Outdoor Venture Corp. v. United States*, 100 Fed. Cl. 146, 152 (2011), *Gonzalez-McCaulley Inv. Grp., Inc. v. United States*, 93

Fed. Cl. 710, 715–16 (2010), *Gov't Tech. Servs. LLC v. United States*, 90 Fed. Cl. 522, 527 (2009), *Data Monitor Sys., Inc. v. United States*, 74 Fed. Cl. 66, 71 (2006), and *ABF Freight Sys., Inc. v. United States*, 55 Fed. Cl. 392, 397 (2003)).[4] These cases seem to reason that by defining "interested part[ies]" for bid protest purposes as "actual or prospective bidders or offerors," *see AFGE*, 258 F.3d at 1302, the Federal Circuit limited standing to parties whose objections stemmed from their status as offerors, not awardees. *See Outdoor Venture*, 100 Fed. Cl. at 152.[5]

Plaintiff does not appear to contest the principle advanced in the aforementioned line of cases, but instead argues that its case does not concern the administration of the LOGCAP III contract. It insists that the December 11, 2012 request represents a solicitation for a new, separate contract, since the performance period of LOGCAP III and Task Order 160 expired in December, 2011. Pl.'s Opp'n at 8, 15. Plaintiff further argues that a statute enacted while LOGCAP III was being performed prohibited the Army from extending that contract beyond its ten-year length absent a written finding of exceptional circumstances by an agency head, which no one maintains had been made. *Id.* at 12 (citing 10 U.S.C. § 2304a(f)). In addition, KBR maintains that its allegations place this matter squarely under our jurisdiction over "alleged violation[s] of statute or regulation in connection with a procurement or a proposed procurement," 28 U.S.C. § 1491(b)(1), since the Federal Circuit in *Distributed Solutions* for this purpose adopted the definition that "procurement includes all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." Pl.'s Opp'n at 16 n.17 (quoting *Distributed Solutions*, 539 F.3d at 1345 (quoting 41 U.S.C. § 403(2))) (emphasis omitted).

---

[4] These precedents are described as "mostly persuasive" because the one Federal Circuit decision in the line, *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014 (Fed. Cir. 1995), is not exactly on point. Although the opinion described the CDA as "the exclusive mechanism for dispute resolution" when it applies, and as "not designed to serve as an alternative administrative remedy, available at the contractor's option," the opinion predated the ADRA and held that the more specific provisions of a statute governing freight carriers were not displaced by the subsequently-enacted and more general CDA. *Id.* at 1017–18.

[5] Of course, when a proposed corrective action effectively restores an awardee to the status of bidder by requiring it to compete again for a contract award, this action may be challenged by the former awardee in a bid protest. *See Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1381–82 (Fed. Cir. 2012); *CBY Design Builders v. United States*, 105 Fed. Cl. 303, 336–37 (2012). Thus the D.C. Circuit decision in *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78–79 (D.C. Cir. 1985), which held to the contrary and predated the ADRA, should not play a part in this line of jurisprudence.

The Court is not persuaded that this matter comes under our bid protest jurisdiction.  First, the Court agrees with the line of cases holding that when a party brings a challenge in our court to an agency action which affects that party because it is a contractor and not because it is (or might be) an offeror, the only vehicle it may use is the CDA.[6]  Although most federal contractors were at one point offerors for the contracts they received, once the contracts are awarded their interests in disputes with the government are those of contractors, not offerors.  Thus the CDA, which mandates that "[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision," 41 U.S.C. § 7103(a)(1), must be followed to ripen the matter for court review.  *See* 28 U.S.C. § 1491(a)(2).

Second, the ten-year limit on task order contracts, 10 U.S.C. § 2304a(f), does not appear relevant to this matter.  Plaintiff argues that it applies retroactively to the LOGCAP III contract already in existence, relying on language in *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994), stating that to determine if retroactive application is warranted "the court must ask whether the new provision attaches new legal consequences to events completed before its enactment."  Pl.'s Supp'l Br. at 2 n.2 (quoting *Landgraf*, 511 U.S. at 269–70) (emphasis omitted).  Based on this, KBR contends that the ten-year limit came into effect before LOGCAP III had terminated, and thus applies to it.  But the *Landgraf* Court also stressed that "[t]he largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights."  *Landgraf*, 511 U.S. at 271.  In any event, this Court cannot find the requisite clear intent of retroactivity in the language of the task order provision, which uses the prospective phrase "entering into a task or delivery order contract under this section" to describe its application.  *See* 10 U.S.C. § 2304a(f) (2012).

Moreover, even if the *performance* of LOGCAP III were limited to ten years by its own terms or due to this statute, there does not seem to be any reason why the closeout activities related to that contract must be either completed within that same period or the subject of a new procurement.  The various tasks involved in the closeout process, including complying with audits and requesting indemnification for the costs of defending civil suits, are not services provided to the Army under LOGCAP III, *see* Am. Compl. ¶ 18, but are ultimately for KBR's benefit, assuring that it is fully reimbursed under the contract.  Plaintiff's theory that these must be the subject of a new contract would suggest that LOGCAP III does not oblige the Army to reimburse KBR for outstanding invoices and litigation costs.  Fortunately for plaintiff, its theory is unfounded.

---

[6]  The only exception is challenges to certain corrective action.  *See supra* note 5.

Third, this matter does not come within the letter of our jurisdiction over "an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract," 28 U.S.C. § 1491(b)(1). The Court does not believe that the terms "bids or proposals" are in the plural by accident.[7] Rather, they are used because the purpose of this provision is to allow protests to the terms of competitive solicitations, in which a contract may be lost to another bidder due to an improper advantage. The provision is not designed to allow a party to object to a request for a proposal directed to that party alone and no others.[8]

Fourth, the *Distributed Solutions* opinion does not place this action within our bid protest jurisdiction. In that case, the Federal Circuit had to determine whether a proposed procurement had begun for the purpose of protests by prospective bidders, whose information was used by an agency in deciding to forgo a competitive acquisition. *See Distributed Solutions*, 539 F.3d at 1344–46. The Circuit adopted the 41 U.S.C. § 403(2) definition of procurement, which "end[s] with contract completion and closeout." *Id*. at 1345 (quoting 41 U.S.C. § 403(2)). But no one questions that the closeout activities at issue were part of a procurement. The problem for plaintiff is that they are the tail end of the LOGCAP III procurement, concerning which KBR is the contractor, not a prospective offeror.

Finally, KBR's theory that its closeout activities "related to" but were "not under" the LOGCAP III contract, because they were allegedly performed under separate, implied-in-fact contracts, *see* Pl.'s Opp'n at 13, is unavailing. The FAR definition of claim, which governs for purposes of the CDA, *see Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1311 (Fed. Cir. 2011), is "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief *arising under or relating to* the contract," 48 C.F.R. § 2.101 (emphasis added). Thus, merely "relating to" the LOGCAP III contract is enough to place this action under the CDA. *See Todd Constr.*, 656 F.3d at 1312–14. For all of the reasons addressed above, this matter is not within our bid protest jurisdiction, but instead involves questions of contract administration that must be brought under the CDA. Since no claim was submitted to the contracting officer under the CDA's requirements, *see* 41 U.S.C. § 7103(a), the matter is not within our subject-matter jurisdiction.

---

[7] Similarly the "interested party" definition, adopted by the Federal Circuit for bid protests, *see AFGE*, 258 F.3d at 1302, references "a solicitation or other request for *offers*" in the plural, 31 U.S.C. § 3551(2) (emphasis added).

[8] An interested party may, however, object to a sole source contract that is to be awarded to another. *See, e.g., Magnum Opus Techs., Inc. v. United States*, 94 Fed. Cl. 512, 527 (2010). Such protests are probably best understood as objections either to violations of laws or regulations requiring competition, or to proposed awards.

## C.  No Competitive Injury is Alleged

Dismissal of this case for lack of subject-matter jurisdiction is also warranted on a second ground raised by the government, the lack of allegations of sufficient prejudice to confer bid protest standing.  *See* Def.'s Mot. at 23–25.  Plaintiff does not contend that the Army's decision to request a firm-fixed price proposal inflicted upon it "a non-trivial competitive injury which can be redressed by judicial relief," which is the Federal Circuit's test for standing to bring a pre-bid, pre-award protest.  *See Weeks Marine*, 575 F.3d at 1363.  To the contrary, KBR concedes that it "is the only source for the solicited [c]loseout services" and that from the perspective of the proposed source "there can be no competitive injury."  Pl.'s Supp'l Br. at 13–14; *see also* Tr. at 47–48, 56.

But rather than accept that any alleged injury --- and hence its grievance --- was not of the bid protest variety, KBR argues for a different test to determine interested party status.  *See* Pl.'s Opp'n at 21 n.20 (arguing "it is irrelevant that KBR's pre-award bid protest does not involve competitive harm").  Just as the *Weeks Marine* test was a departure from the substantial chance test used in protests involving evaluated bids, plaintiff contends that a different standard should be employed to allow parties offered sole-source contracts to establish  the "direct economic interest" for standing under the CICA interested party definition, 31 U.S.C. § 3551(2).  Pl.'s Supp'l Br. at 15–17.  When the only party with whom the government is dealing alleges that the government's failure to follow a statute or regulation worsens the deal economically, that is enough under KBR's approach.  Thus, its allegations that it risks underpayment if a regulation purportedly requiring a cost-reimbursement contract is not followed, or loses money if payments are delayed due to a failure to comply with the Antideficiency Act, would suffice to confer standing if plaintiff's proposed standard were adopted.  *Id.* at 17; Pl.'s Opp'n at 22; *see* Am. Compl. ¶¶ 34, 41, 43, 81–82.

The Court cannot agree that this type of grievance may be redressed under our bid protest jurisdiction.  The reason that a competitive injury must be alleged is that the competitive process is policed through bid protests.  If a potential offeror alleges that a solicitation impropriety puts it at a competitive disadvantage, or that a proposed sole source award improperly precludes it, these are the sorts of injuries that may be the bases for bid protests.  The alternatives are competing at a disadvantage (if permitted), or not competing and losing the chance to receive a valuable contract.  These sorts of consequences are not presented when, as here, a deal proposed by the government would allegedly have been more lucrative for a would-be sole source were certain laws or regulations followed.  When there is no competition to lose, and no competitor who may accept the deal, the would-be contractor avoids the costs of this unsatisfactory proposal as it does any other --- by rejecting it.  To be singled out for the offer of a bad deal might be an insult, but for

bid protest purposes it is not injury.  If a delay in receiving payment for closeout costs results from such a rejection, the proper course is an action under the CDA for breach of contract or for an equitable adjustment.

The only injury alleged by KBR that is remotely of a competitive nature is that by not submitting a firm-fixed price proposal, it "risks receiving an adverse Contractor Performance Assessment Report (CPAR) from the Army, which will affect KBR's ability to obtain future contracts." Am. Compl. ¶ 55.  Of course, if turning down the Army's request may be termed the adverse performance of a contract --- presumably the LOGCAP III contract --- this confirms that the CDA is the proper vehicle for redress.  *See Todd Constr.*, 656 F.3d at 1314–16.  In any event, any associated injury would stem from the action of issuing the CPAR, which is merely speculative at this point, and not from the issuance of the request for a proposal.

Plaintiff has not alleged the sort of non-trivial competitive injury that is required for it to have standing as an interested party under the ADRA.  Its case is, accordingly, not within our subject-matter jurisdiction.

## D. The Duties of Fair and Honest Consideration Have No Bearing on this Matter

Plaintiff rather confusingly attempts to establish jurisdiction by invoking cases which concern the implied contract (or covenant) to fairly and honestly consider bids, which it argues may be litigated under 28 U.S.C. § 1491(b).  *See* Pl.'s Opp'n at 16–20 (citing, *inter alia*, *J.C.N. Constr., Inc. v. United States*, 107 Fed. Cl. 503 (2012), and *Castle-Rose, Inc. v. United States*, 99 Fed. Cl. 517 (2011)); Am. Compl. ¶ 7.  While the Court agrees that under *Resource Conservation Group, LLC v. United States*, 597 F.3d 1238 (Fed. Cir. 2010), any procurement protests that could have been brought under the implied contract theory were preserved by Congress under the ADRA, *see MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503, 522–25 (2011), it is hard to see what this has to do with KBR's case.  Plaintiff does not allege that any proposal has been submitted and been the subject of unfair or dishonest treatment --- to the contrary, the basis of its suit is that it refused to submit a proposal.  Nor has it identified any precedent under the implied contract case law entertaining the type of claim it brings here --- a proposed sole source challenging the legality of a government request.[9]  And regardless of the label KBR places on its case, as an action under section 1491(b) it would still need to satisfy the "interested party" standing requirement, and present a bid protest rather than questions of contract administration governed by the CDA --- neither of which, as

---

[9] Matters formerly brought under the implied contract theory are now protected under 48 C.F.R. § 1.602-2(b).  *See B & B Med. Servs., Inc. v. United States*, 114 Fed. Cl. 658, 660–61 (2014).

we have seen above, is the case here.  Accordingly, for all the reasons stated above, the government's motion to dismiss this case under RCFC 12(b)(1) is **GRANTED**.

### III.  CONCLUSION

Plaintiff's case concerns matters of contract administration which must be brought under the CDA, and does not come under our bid protest jurisdiction.  Nor can KBR establish standing to bring a bid protest, as it has not alleged that the government inflicted upon it a non-trivial competitive injury.  For the foregoing reasons, the government's motion to dismiss the case for lack of subject-matter jurisdiction is hereby **GRANTED**, and its motion to dismiss portions of the case for failure to state a claim upon which relief can be granted is **DENIED-AS-MOOT**. The Clerk shall close the case.

**IT IS SO ORDERED.**


s/ Victor J. Wolski _____
**VICTOR J. WOLSKI**
Judge